## SINNOTT v. RAILROAD.

(*Nashville.* February 3, 1900.)

RAILROADS. *Refusal of return passage on commutation ticket.*

The purchaser of a round-trip, not transferable, railroad ticket, is not entitled to return passage thereon, or to damages for refusal of such return passage, where he purchased and accepted the ticket at one-half the regular fare, upon the condition, among others indorsed thereon, that the ticket should not be good for return passage until he should identify himself before a specified agent of the company as the original purchaser, by signing his name on the back of the ticket, and by other means, if required, where he signed the acceptance of the ticket, before an agent of the company to whom his true name was unknown, as "H. Thomas," and was refused certificate of identification by the other specified agent of the company upon this signature, because his true name was known to that agent as "H. Thomas Sinnott," and was, in consequence, refused return passage on the ticket.

FROM DAVIDSON.

Appeal in error from Circuit Court of Davidson County. J. W. BONNER, J.

JOHN A. PITTS, JR., for Sinnott.

SMITH & MADDIN for Railroad.

CALDWELL, J.   H.   Thomas   Sinnott   brought   this
action   against   the   Louisville   &   Nashville   Railroad
Company   to   recover   damages   for   an   alleged   wrong-
ful   and   forcible   ejection   from   one   of   its   pas-
senger   cars.   Verdict   and   judgment   were   for   the
defendant,   and   the   plaintiff   prosecutes   a   writ   of
error.

The   declaration   contains   two   counts,   the   first
one   averring   in   general   terms,   and   briefly,   that
the   defendant   wrongfully   and   forcibly   ejected   him
from   one   of   its   passenger   cars   at   a   certain   time
and   place,   and   the   second   one   being   as   follows:

"2.   The   plaintiff   sues   the   said   defendant   for
another   two   thousand   dollars   damages   for   that
heretofore,   on   the   12th   day   of   June,   1897,   the
plaintiff   purchased   a   ticket   of   the   ticket   agent   of
the   defendant   at   Owensboro,   Ky.,   and   paid   him
therefor,   calling   for   transportation   from   that   place
to   Nashville,   Tenn.,   and   return,   and   limited   for
return   passage   to   the   19th   day   of   June,   1897;
the   said   ticket   provided,   among   other   things,   that
it   should   only   be   good   for   return   passage,   within
the   said   limit,   of   the   original   purchaser   after
identification   by   signature   on   the   back   of   the
same   (and   by   other   means   if   required),   in   the
presence   of   joint   agent   of   terminal   lines   at   Nash-
ville,   Tenn.,   by   whom   the   same   was   to   be   stamped
with   what   was   termed   a   validating   stamp.   The
plaintiff   came   to   Nashville   on   said   ticket,   on   the
railroad   of   the   said   defendant,   and   within   the

Sinnott *v.* Railroad.

limit of said ticket, to wit, on the evening of
June 16, 1897, the plaintiff desiring to return to
Owensboro, Ky., presented the said ticket to the
said joint agent of terminal lines at Nashville,
namely, one J. A. Thomas, who was the agent
of the defendant referred to in the said ticket as
the joint agent of terminal lines, and offered to
identify himself as the original purchaser of the
ticket by signature, or otherwise, and did identify
himself as original purchaser by signature in pres-
ence of said J. A. Thomas, who also personally
knew the plaintiff, and demanded return passage
to Owensboro, Ky., but the said J. A. Thomas
wrongfully and oppressively refused to stamp the
ticket; the plaintiff thereupon boarded the proper
train of defendant going in the direction of Owens-
boro, Ky., and offered the said ticket for pas-
sage to the conductor of said train, who refused
to accept the same, and at Guthrie, Ky., wrong-
fully ejected plaintiff from said train, the plain-
tiff being then and there, as was well known to
said conductor, very sick, and scarcely able to
stand upon his feet, to the great hurt, incon-
venience, and humiliation of plaintiff, and to his
damage two thousand dollars, and therefore he sues
and demands a jury to try the cause."

The plea is not guilty.

The material facts disclosed at the trial were
that the plaintiff purchased the ticket for less
than half the customary fare, at Owensboro, Ky.,

from an agent who did not know him; that he there signed the ticket on its face as H. Thomas, when his name was H. Thomas Sinnott; that, when desiring to return and within the time limited, he presented the ticket to the proper agent at Nashville, to have it stamped and validated for return passage, and, upon being given pen and ink to write his signature on the back of the ticket, he again wrote only his given name, H. Thomas, instead of his full name, H. Thomas Sinnott; that the validating agent, who had known the plaintiff personally for years by his true name only, declined to recognize him as H. Thomas, and to stamp and validate the ticket with that name written upon it as his signature; that, upon being refused admittance to the train on his unstamped ticket, the plaintiff purchased a full fare ticket to an intermediate point, and with it passed through the gate and upon the car; and that, on being twice approached by the conductor, presented and demanded passage upon the ticket which the agent had declined to validate, and was thereupon gently expelled at Guthrie, Ky., some fifty miles from Nashville.

The more important parts of the ticket are the following:

"Good for one first-class passage to Nashville, Tenn., and return, when officially stamped and sold by agent, if signed by the original purchaser in ink, and presented with coupon attached, in

accordance with the following contract between the purchaser and issuing line. . . .

"4th.   This ticket is only good for return passage of original purchaser after identification by signature on the back of this contract (and by other means if required) in the presence of joint agent of terminal line at Nashville, Tenn., who must witness the signature, date, and stamp on the back hereof the date of identification. . . .

"7th.   This ticket is not transferable, and if found with, or presented for the transportation of any other than myself, the original purchaser, it will become void, and is not to be honored for passage.

"8th.   To identify myself as the original purchaser, and to prevent imposition, I agree to write my name whenever requested to do so by agents or conductors. The right exists to declare this ticket and coupons void, and forfeited for violation of or failure to comply with any of the conditions of this contract; and it may be exercised by any conductor or agent of this company.

"Signature must be written in manuscript with pen and ink.

"(Signature) H. THOMAS, *Original purchaser.*

"Witness: W. L. MILLS, *Ticket Agent.*

"Date of sale, 6—12—1897."

On the back of the ticket is this language:

"In compliance with the within contract, I here-

by subscribe my name, as the original purchaser
of this ticket.

"(Signature) H. THOMAS, *Original purchaser.*

"Witness ...........................

"*Joint Agent at Nashville.*

"Dated ..................... 189.."

After saying that the conditions and require-
ments on the ticket were binding, his Honor, the
trial Judge, further instructed the jury that the
agent at Nashville had a right to refuse to vali-
date the ticket, though signed "H. Thomas" on
the face and on the back, if he knew the per-
son so signing it to be H. T. Sinnott, and that
the fact that "H. Thomas" was a part of his
name did not justify H. T. Sinnott in so sign-
ing the ticket and claiming the right to ride on it.

The plaintiff assails this instruction and insists
that it erroneously construes the contract, in that
it makes the plaintiff's right to have the ticket
validated, and to be given return passage depend
upon the question as to whether or not. he signed
the ticket in his full name, rather than by the
question as to whether or not he was the original
purchaser, when, as he contends, the signature, under
a proper construction of the contract, is of only
secondary importance, being but_a method of iden-
tifying the holder as the original purchaser of the
ticket.

The instruction, when applied to the facts of
this case, undoubtedly means that the plaintiff,

though he may have been the original purchaser
of this ticket under the name of "H. Thomas,"
was not entitled to validation and return passage
if the validating agent knew him to be H. T.
Sinnott; and in that view this Court fully con-
curs.

Beyond question the primary object of the writ-
ten signature on the face and on the back of
such a ticket is one of identification by a com-
parison of handwriting; and the ultimate purpose
is to make sure, if may be, that none but the
original purchaser shall enjoy the return passage.
But that does not imply that a man may pur-
chase and sign a ticket in any name he may
choose, and at the end of the journey rightly
demand validation for return passage upon signing
the same name again in the presence of a vali-
dating agent who knows such not to be his true
name. On the contrary, the agent in such a
case may justly refuse his approval and stamp
upon that ground, and without further investiga-
tion. When he sees the holder of the ticket sign
another name as his own, he need not compare
the handwriting on the face with that on the
back, nor take any other step toward identifying
the holder as the original purchaser, but may for
his purposes assume that they are different per-
sons, and act accordingly.

An essential part of the first requirement of
the ticket before the Court is that it shall be

"signed by the original purchaser in ink" upon its face: the fourth condition calls for his "signature" on its back; the eighth condition binds him to write his "name whenever requested" for purpose of identification; and that which is to be witnessed on the face by the selling agent, and on the back by the validating agent is the "signature" of the original purchaser. These requirements all contemplate that the purchaser will use his real name, not the name of another, nor only his given name.

To sign a paper is to subscribe one's own name to it, and a signature is that name written by him, or by another with his authority.

On the back of the ticket are the words, "In compliance with the within contract, I hereby subscribe my name as the original purchaser of this ticket," and they are followed by the name "H. Thomas," written by the plaintiff. Immediately under this is a line prepared for the validating agent, as follows:

"Witness .........................,

*"Joint Agent at Nashville."*

By filling the blank in this line with his signature, as must have been done as a part of the process of validating, the agent would have witnessed that "H. Thomas" had signed the name above in his presence, which he could not truthfully have done since he knew the person writing that name to be H. T. Sinnott. For this

reason, if none other, the agent was justified in refusing to validate the ticket. He could not be required to certify that "H. Thomas" was the signature of H. T. Sinnott, though he saw him write it.

It is well said in behalf of plaintiff that there may be, and are, frequent occasions when one's private and business interests make it desirable for him to travel incognito, and that he should be allowed to do so at his own election and without let or hindrance by the carrier. That privilege, so far as the carrier is concerned, can always be enjoyed by the payment of full fare. It cannot be demanded, however, by the passenger who rides on a commutation ticket, in whose purchase he expressly agrees, as a part of the consideration for reduction in fare, to sign his name in the presence of the carrier's agent, and to otherwise identify himself if required to do so.

What has been said is necessarily conclusive of the whole case, consequently the other assignment of error need not be considered.

Let the judgment be affirmed.