Clinton W. DELESPINE, Appellant,

v.

The STATE of Texas, Appellee.

No. 37677.

Court of Criminal Appeals of Texas.

Oct. 13, 1965.

Rehearing Denied Dec. 8, 1965.

M. Gabriel Nahas, Jr., Raeburn Norris, King C. Haynie, Houston, for appellant.

Frank Briscoe, Dist. Atty., Carl E. F. Dally and Lee P. Ward, Jr., Asst. Dist. Attys., Houston, and Leon B. Douglas, State's Atty., Austin, for the State.

WOODLEY, Judge.

The offense is murder; the punishment, 99 years.

Gwendolyn Christine Einkauf, a housewife and mother of two daughters, one 10 and the other 12 years old, talked to her husband by telephone about 11 A.M. His calls beginning shortly after 3 P.M. were not answered, and the two daughters were unable to get their mother to respond to their telephone calls between 3 and 4 P.M. The girls then walked to their home and found their mother lying crosswise on the bed dead. Her blouse was open and her clothes were pulled down around her ankles, leaving most of her body nude. There was blood around her mouth and nose and a smear of blood across the bed cover. There was no evidence of a struggle or that the deceased had been sexually molested.

The indictment alleged that appellant killed the deceased by choking and strangling her with his hands.

The testimony of the County Medical Examiner was to the effect that death was the result of manual strangulation.

A written statement was offered in evidence as the voluntary confession of the appellant. The warning required by Art. 727 V.A.C.C.P. appearing at the beginning of the statement was, according to the state's witness, properly given and the statement was made voluntarily.

After a hearing before the court in the jury's absence, at which appellant and other witnesses testified and fact issues as to voluntariness were raised, the statement in which appellant confessed to having killed the deceased was admitted in evidence and was read to the jury.

Testifying before the court, and later before the jury, appellant repudiated the inculpatory portion of the confession and denied that he killed the deceased, or that he told the officers that he killed her.

The evidence, including the testimony of the appellant and the written statement admitted in evidence as his voluntary statement, shows that he went to the home of the deceased after noon on the day in question as a repairman for her hi-fi set. It was his testimony that she was at the door as he left and that he did not touch her while there.

The state's evidence shows that the dead body of the deceased was discovered some time after 4 P.M. The Medical Examiner fixed the approximate time of death as 2 o'clock P.M., plus or minus an hour.

The written statement contains the confession of the appellant that as he was getting ready to leave the deceased made advances and they went into her bedroom. It reads in part: " * * * I grabbed her by the neck with my hands and I choked her. I held my hands around her neck 'till she quit moving. She didn't fight me much, I grabbed her so quick she didn't have a chance to fight. After I choked her down and she was laying on the bed I pulled her pedal pushers and her panties down * * *

to look at her body. After this I left the house. * * * "

In appellant's original brief reversal was sought upon the ground that the trial court submitted the issue raised by the evidence as to the voluntary nature of the confession to the jury without first having resolved such issue. Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908; Lopez v. State, Tex.Cr.App., 384 S.W.2d 345; Harris v. State, Tex.Cr.App., 384 S.W.2d 349; and Dixon v. State, Tex.Cr.App., 383 S.W.2d 928, were cited and relied upon.

We overrule this claim of error.

Subsequent to the filing of such brief in this Court a Supplemental Transcript and an additional Statement of Facts were forwarded to this Court by the clerk of the trial court containing findings signed by the trial judge on the issue of the voluntary nature of the confession based upon the testimony of the witnesses at the hearing before him bearing upon the facts and circumstances surrounding the arrest and the subsequent taking of the confession.

The trial court certifies that at the conclusion of the hearing the confession was admitted into evidence, he having found as a matter of law that it was voluntarily made, and the evidence having established beyond a reasonable doubt that it was freely and voluntarily made.

The findings of the trial judge and the evidence adduced at the hearing upon the voluntariness issue prior to the admission of the confession to the jury enables this Court, and will enable the Federal Court as well, to pass upon the question of whether appellant was afforded the federal rights to which he is entitled under Jackson v. Denno, supra, without further hearing on the issue of voluntariness.

■ In view of the Supreme Court's holding in Henry v. State of Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408, we have concluded that the trial judge's belatedly filed findings and certification should be considered.

The evidence shows that appellant signed the written statement some three hours after it was made and reduced to writing.

The confession introduced in evidence is typewritten, including the place for signature: "Signed —————————
Clinton W. Delespine"

The written signature in the blank space is not clearly legible, but the evidence shows it to be appellant's given name only.

Appellant testified that prior to signing the statement he was told he could see his wife and, believing that by signing his first name only the instrument had no legal effect, he signed it; that his father had always told him that an instrument had no legality unless it was signed by one's full name and that he signed it only to be allowed to see his wife and to stop the officers from further interrogating him.

The jury was instructed in the court's charge: " * * * if you believe, or if you have a reasonable doubt, that at the time the defendant wrote the name 'Clinton', in manuscript form, if he did, at the conclusion of the alleged confession now in evidence before you, he did so not intending to sign the same then you will not consider it for any purpose."

The state's witnesses who were present when the statement was signed testified regarding the signing of the confession.

Officer D. M. Fults, to whom the statement was made, testified:

"Q. Is that what the Defendant wrote on there?

"A. Yes, sir, it is.

"Q. And when he wrote that on there, did you ask him anything?

"A. Yes, sir, I did.

"Q. And did you ask him anything about that signature—or, that writing?

"A. I did.

"Q. And what did he tell you?

"A. He told me that's the way he signs his name.

"Q. That that was his signature?

"A. That that was his signature.

\* \* \* \* \* \*

"Q. Did he tell you at the time that he wrote that on there that that is no good because that is not his signature, and in order to make an instrument legal, he would have to sign his signature to it?

"A. He told me at that time that that was his signature—that's the way he writes his name."

Charles Schneider, III, reporter for the Houston Post, a witness to the signing of the statement, testified:

"Q. As a newspaperman, signing your signature as a witness to an instrument, did you question why only the name 'Clinton' was written on there?

"A. Yes, sir, I did.

"Q. And what was told to you?

"A. Well, as I recall, I asked—I remember that Mr. Delespine scrawled out the 'Clinton', and I was watching him as he scrawled it.

"If I am not mistaken, he signed it with his right hand, and I was standing to his left—I am not going to say where I was standing, as I can't recall for sure—anyway, I watched him as he signed the thing, and I asked him —I said,—I looked at it and I said, 'Aren't you going to sign the rest of it?', and he said, *No, that's the only way that I ever sign my name.'*

"He said, "That will do. That's enough. That's my name. That's all you need.'

\* \* \* \* \* \*

"Q. Did you hear this Defendant say that it was no good because he only signed his first name to it?

"A. No. In fact, he told me that was all that was needed."

Kent Demaret, Assistant City Editor of the Houston Press, who also signed the confession as a witness, testified:

"Q. Did you, as a newspaper man, question the fact that only the name 'Clinton' was written on it?

"A. No, sir, I didn't; I knew why it was written.

"Q. Sir?

"A. I knew—I didn't have to question him.

"Q. You knew?

"A. Yes, sir.

"Q. What do you mean 'you knew'?

"A. Well, I had been with Clinton for about two hours, and I saw him sign his name and say 'That's enough, that's the way I'—generally, and I am not quoting verbatim, because I don't remember that well, but generally, 'that's the way I sign it', or 'that's the way I do it', or 'that's the way it's going to be', or something like that."

■ The rule subscribed to in most jurisdictions, cited with approval by this Court in Bustillos v. State, Tex.Cr.App., 213 S.W. 2d 837, appears to be that one may employ any character, figures or designation he considers proper to use as a signature and will be bound thereby, provided he uses it as a substitute for his name.

■ One "signs" a document when he writes or marks something on it in token of his intention to be bound by its contents. In the case of an ordinary person a signature is commonly performed by subscribing his name to the document—but any mark is sufficient if it shows an intention to be bound by the document.

■ A signature may be made by the use of only the Christian or given name of the

person signing. 80 C.J.S. Signatures § 3, p. 1288.

Art. 727 C.C.P. recognizes the signing by mark when the defendant is unable to write his name, but requires in such event that the statement be witnessed by some person other than a peace officer who shall sign the same as a witness.

We are aware of no case where a confession has been held to be inadmissible because the defendant who made and signed it did not sign his true name.

■ Two witnesses other than peace officers witnessed the signing of the confession by appellant and heard his statement regarding his usual signature being his first name only. Had appellant been unable to sign his name, his mark would have been sufficient. Appellant's contention that the confession was inadmissible because it was not signed is overruled.

Other grounds for reversal are presented by additional brief of the appellant.

The indictment alleged that the deceased was killed by strangulation by the use of the hands.

The Medical Examiner, whose qualifications were stipulated and proved, testified as to the results of the autopsy and his complete external and internal examination of the body of the deceased and he was asked, and answered:

"* * * Were you able to determine from your examination how the deceased, Gwendolyn Christine Einkauf, met her death?

"A. I was—I did, rather, Yes, sir.

"Q. And what was that?

"A. The cause of death was asphixia due to manual strangulation."

Objection was made to the use of the word "manual" in the expert's opinion, but no motion or request for instruction to the jury to disregard the answer was made.

The Medical Examiner agreed that the injuries present in the neck of the deceased, including hemorrhages and swelling around the larynx and fracture of the hyoid bone, could have been inflicted by choking with means other than the hand or hands. No such other means was suggested.

The expert witness testified without objection:

"Q. * * * Do you have an opinion, from the injuries that you observed on the body of Gwendolyn Christine Einkauf, that you have described as causing her death—the length of time that this manual strangulation, with the hands, the pressure that would have been exerted by the hands on the throat of Gwendolyn Christine Einkauf to have caused these injuries and her death?

"A. Yes, sir, I do.

"Q. And what is that?

"A. It would be my opinion, on the order of two and a half to three minutes.

"Q. And that would be two and a half to three minutes of steady pressure?

"A. Yes, sir."

■ We find no reversible error in the overruling of appellant's objection to the use of the word "manual" in his expert opinion.

Appellant complains that a witness called by the defense to testify on the admissibility of the confession before the court was called by the state for further cross-examination before the jury and the state was allowed to ask leading questions.

■ The propounding of leading questions seldom constitutes ground for reversal. We do not agree that prejudice is shown.

Appellant next contends that the court should have ruled as a matter of law that the statement was not a voluntary confession.

We overrule this contention and point out that "an issue as to the voluntary nature of the written statement was raised by the evidence," as stated in appellant's original brief, which issue the trial judge, and thereafter the jury, resolved against appellant.

■ The state's evidence is deemed sufficient to sustain the finding of the trial judge and the jury that the confession was voluntarily made and signed after warning which complied with the statutes. Art. 726 and 727 V.A.C.C.P.

If appellant's testimony be true he did not confess to killing the deceased and did not voluntarily sign the written statement in which such confession appears. If the testimony offered by the state is true, the confession was voluntarily made and the sole question is whether the written statement was "signed" as required by Art. 727 V.A.C.C.P. We hold that under the evidence it was so signed.

The remaining claim for reversal relates to the introduction in evidence of a coat found in appellant's home upon which were specks of blood, not visible to the naked eye. It is contended that the coat was seized from appellant's home as the result of an illegal search.

■ The state's evidence was that the appellant gave the officers permission to get the clothes at his home. We overrule the contention that the coat was obtained as the result of an illegal search.

■ The evidence is sufficient to sustain the jury's verdict and we find no error which would warrant reversal.

The judgment is affirmed.

McDONALD, Presiding Judge (dissenting).

The state offered in evidence what purports to be the written confession of appellant. The instrument contained only appellant's first name. The following objection was taken to its introduction:

"Your Honor, the first objection we have to it is, first, it is purported at the top of it, 'Clinton W. Delespine,' and at the bottom of the so-called statement, it is typed—signed—Clinton W. Delespine. The writing with the pen is illegible, and you certainly cannot tell whether it is 'Clinton', 'Clifford' or what it is.

It is certainly—from the looks of it, it is only one name and which is not Clinton W. Delespine.

By examining the instrument, it is not the same as recited in the statement or recited in the indictment. For that reason, if the Court please, we object to the introduction of this statement."

Other objections were subsequently taken in the course of the hearing, out of the presence of the jury. This testimony alone comprises 173 pages of the record in this case. At the conclusion of the testimony out of the jury's presence, the Court overruled all of appellant's objections and admitted the confession. Appellant again reurged the same objection at the time that the state offered the confession, in the jury's presence. The Court again overruled the objection.

Appellant testified that he finished the 10th grade at Northeast High School in San Antonio and later went to a trade school. The purported confession reflects that he finished Edison High School in San Antonio and attended St. Mary's University there for two years. While the evidence as to his education is conflicting, it is undisputed that he had a fairly good education

and was far from being illiterate or incapable of writing his name. He testified that he talked to his lawyer, Mr. Nahas, over the telephone while being questioned by Inspector Stephenson.

A question similar to the one before us has never been previously determined in this state. This Court is not here concerned with the truth or falseness of the statement, nor is it concerned as to the voluntariness of the confession. It is concerned with the sole question of the admissibility of the instrument signed by first name only as a confession.

The law governing confessions in Texas is contained in Art. 727 of our Code of Criminal Procedure. This article provides as follows:

"Art. 727. When confession shall not be used.

The confession shall not be used if, at the time it was made, the defendant was in jail or other place of confinement, nor while he is in the custody of an officer, unless made in the voluntary statement of accused, taken before an examining court in accordance with law, or be made in writing and signed by him; which written statement shall show that he has been warned by the person to whom the same is made: First, that he does not have to make any statement at all. Second, that any statement made may be used in evidence against him on his trial for the offense concerning which the confession is therein made; or, unless in connection with said confession, he makes statements of facts or circumstances that are found to be true, which conduce to establish his guilt, such as the finding of secreted or stolen property, or the instrument with which he states the offense was committed. If the defendant is unable to write his name, and signs the statement by making his mark, such statement shall not be admitted in evidence, unless it be witnessed by some person other than a peace officer, who shall sign the same as a witness."

It is obvious from the above statute that it actually has three distinct parts dealing with confessions. First, it deals with those made *before an examining court in accordance with law*. Second, a voluntary written statement, made after first being warned, etc., and third, a statement leading to the recovery of the "fruits of the crime," stolen property, etc.

Only the first two parts of the above statute are pertinent here. The statutory provision governing voluntary statements made before examining courts is set forth in Art. 248, V.A.C.C.P.:

"If the accused desires to make a voluntary statement, he may do so before the examination of any witness, but not afterward. His statement shall be reduced to writing by or under the direction of the magistrate, or by the accused or his counsel, and shall be signed by the accused by affixing his name or mark, but shall not be sworn to by him. The magistrate shall attest by his own certificate and signature to the execution and signing of the statement."

Texas is the only state in the Union with a legislative act concerning signed confessions. 23 A.L.R.2d 922. Except where signing is required by statute the mere fact that a written confession is unsigned will not render it inadmissible in evidence where it is otherwise admissible, since acquiescence or approval makes the confession the defendant's own. 23 A.L.R.2d 922. The Supreme Court of the United States held in Wong Sun .v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441, that where a confession is unsigned, whatever bearing this may have upon its weight and credibility, does not render it inadmissible in evidence. It was held in an Illinois case, People v. Hanson, 31 Ill.2d 31, 198 N.E.2d 815, that even though defendant did not sign the confession, the confession could be proven by testimony of the court report-

er who took it. Although the United States Supreme Court did speak in the Wong Sun case, it took an entirely different view in a much earlier civil case, which has never been overruled and is still cited. In Origet v. United States, 125 U.S. 240, 8 S.Ct. 846, 31 L.Ed. 743, a question arose on a bill of exception indorsed "Allowed A. B.", the letters being the initials of the name of the presiding judge of the lower court. The Supreme Court said, "We cannot regard the initials 'A. B.' as the signature of the judge, or as a sufficient authentication of the bill of exceptions, or as sufficient evidence of its allowance by the judge or the court." The Act of Congress by Section 4 of the act of June 1st, 1872, Chpt. 255, 17 L. 197, now Section 953 of the Revised Statutes, at the time this opinion was handed down in 1887 enacted as follows: "A bill of exceptions allowed in any cause shall be deemed sufficiently authenticated if signed by the judge of the court in which the cause was tried, or by the presiding judge thereof, if more than one judge sat on the trial of the cause, without any seal of court or judge being annexed thereto." This provision merely dispensed with the seal. The necessity for the signature still remains.

In Conery v. His Creditors, 115 La. 807, 40 So. 173, the Supreme Court of Louisiana held that the initials of the name of a district judge written beneath an order of appeal cannot be regarded as his official "signature" or as sufficient evidence of the granting of such order. The judge of the civil district court was named W. B. Sommerville. The judge wrote the initials of his name beneath the order, and notified all parties that the appeal had been granted. The Louisiana court cited with approval Origet v. United States, supra.

In Sinnott v. Louisville & N. R. Co., 104 Tenn. 233, 56 S.W. 836, the Supreme Court of Tennessee had before it a case wherein J. H. Thomas Sinnott brought suit against the railroad company to recover damages for an alleged wrongful ejection from one of its passenger cars. The verdict and judgment were for the defendant and the plaintiff prosecuted a writ of error. Sinnott had purchased a round-trip ticket. He sought to get it validated for the return trip from Nashville to a point in Kentucky. One of the conditions written on the ticket was that the purchaser must present the ticket to an agent and after identification by signature on the back, it was good for the return passage. Sinnott wrote his name on the ticket as H. Thomas, but the agent knew him and would not accept the ticket for his return fare. Sinnott then went ahead and boarded the train for Kentucky, but the conductor refused to accept it, and he ejected Sinnott at Guthrie, Kentucky. The Court held that the agent was justified in refusing to validate the ticket, as he could not be required to certify that "H. Thomas" was the signature of J. H. T. Sinnott. The Court held that the conditions on the ticket contemplate that the purchaser will use his real name, not the name of another, nor only his *given name*. The judgment in favor of the railroad company was affirmed.

Fator v. State, 59 Tex.Cr.R. 251, 128 S. W. 901, was decided by this Court in 1910. The Court held that bills of exception must be officially approved and authenticated by the trial judge in order to be considered on appeal, and where they merely contained the initials which were the same as the trial judge's initials they cannot be considered. The judge's name was P. H. Shook. He affixed to the bills, "O.K. T. J.N. P.H.S."

It can be readily seen that most jurisdictions apply rigid rules to statutory provisions requiring the signing of documents or signatures to documents. The rule is otherwise in criminal cases because, as earlier pointed out, Texas is the only state requiring by statute or legislative enactment the signing of a confession. The Federal Courts do not require confessions to be signed.

This Court has not previously had before it this precise question, but it has had many constructions and opinions, through the years, with the statute dealing with

voluntary statements made before examining courts.

In Taggart v. State, 149 Tex.Civ.App. 91, 191 S.W.2d 728, appellant was charged by complaint in the justice court with murder. He was arrested and taken before the justice of the peace, sitting as a magistrate in an examining court. Upon the hearing, after being given the statutory warning, appellant made an oral statement which was taken down in shorthand by a reporter and subsequently reduced to writing. The statement *was not signed by the appellant.* The magistrate did not attest by his own certificate and signature to the execution and signing of the statement. Upon the trial of the cause, the statement was admitted in evidence over appellant's objection that the requirement of Article 248, V.A.C.C.P., requiring that the statement be signed by the accused and attested by the magistrate certifying to the execution and signing of the statement, had not been complied with. This Court held that the statement was subject to the objection urged and *was inadmissible.*

In Amayo v. State, 108 Tex.Cr.R. 346, 300 S.W. 935, an examining trial was held and a purported confession from the appellant was introduced by the state, which was never signed by appellant. Objection to its introduction was timely made for the reason that the statute required the signature of appellant to said purported confession before same was admissible. This Court cited Art. 248, supra, and then stated: "To hold that a purported voluntary statement of the accused given at an examining trial was admissible without the signature of the accused would be in effect to judicially repeal a plain and apparently mandatory provision of the statute. The legislative intent is made plain and certain by the language of this article. Its meaning is not doubtful, and it would not appear to us to require any reference to an authority, further than to the terms of the article itself, to show that this evidence was inadmissible.

In Pineda v. State, 101 Tex.Cr.R. 637, 273 S.W. 859, the state introduced a voluntary statement, taken at the examining trial. It was not shown that the statute had been followed with reference to the taking of the same, and especially that part of it that requires that the magistrate shall attest by his certificate and signature to the execution and signing of the statement. The statement shows that the magistrate before whom the statement was alleged to have been made did not attest the same, and there is no certificate of any description found thereon. In addition to this, the state's testimony affirmatively shows that the magistrate did not affix his certificate thereto at the time it was taken or at any other time. Under this state of the record, we hold that this alleged voluntary statement made on the examining trial was not admissible in this case. "The statute provides that the magistrate shall in every case attest by his certificate and signature to the execution and signing of the statement. This statute is plain and unambiguous and was evidently passed by the Legislature for a definite purpose, and we think the trial court was without warrant in law in ignoring the plain terms of the statute." The court was construing Art. 295, C.C.P., which was later brought forward as Art. 248 under the 1925 codification.

Baggett v. State, 65 Tex.Cr.R. 425, 144 S.W. 1136, was reversed upon some other grounds, but the opinion does recite facts showing the inadmissibility of a voluntary confession, not signed by appellant and not witnessed by anyone.

In Knighton v. State, 126 Tex.Cr.R. 436, 72 S.W.2d 602, an unsigned statement made before a justice of the peace was held inadmissible. This Court, speaking through Presiding Judge Morrow said, "To authorize the introduction in evidence of a statement such as that in the instant case, it must bear the signature of the accused and be authenticated by the signature of the magistrate. In the present instance, neither of these requisites appears from the record." The judgment was reversed and cause remanded.

Coleman v. State, Tex.Cr.App., 20 S.W. 2d 1060, was reversed by this Court because appellant was questioned upon cross-examination about an unsigned statement made at an examining trial in the justice court, which he testified that he did not make. The contents of the statement were not offered in evidence. On Rehearing, Judge Lattimore, speaking for this Court, said that "we were in error in holding this admissible."

It is apparent from the previous holdings of this Court in construing Art. 727 with reference to the application of Art. 248, supra, that a strict or rigid construction to the statute has been given. For this reason, I feel that the portion of Art. 727, applicable to the case at bar, should also be strictly construed in order not to disregard the legislative act by judicial decision.

It is clear to me that the statement or confession does not meet the legal tests of admissibility.

For the reasons stated, the judgment should be reversed and the cause remanded. I respectfully dissent.