ROBERT BUSTILLOS v. STATE.

No. 24102. June 16, 1948.
Rehearing Denied October 13, 1948.

Hon. Daniel A. Blair, Judge Presiding.

*Smith, Cunningham & Boling,* of Lubbock, for appellant.

*Lloyd Croslin,* District Attorney, of Lubbock, and *Ernest S. Goens,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The offense is murder. The punishment assessed is confinement in the state penitentiary for life.

The record shows that between sundown and dark on July 19, 1947, appellant and Cedro Castello went to the home of the deceased, a city policeman by the name of Julio Herrera. Appellant approached the deceased from the rear, snatched Herrera's pistol from its scabbard and shot him four or five times and then stabbed and cut him several times with a large knife. The wounds thus inflicted produced death within a very short time. It appears that appellant had been arrested for possessing beer for the purpose of sale a day or two prior to the killing and he had conceived the idea that the deceased had reported him.

Appellant introduced some witnesses by whom he proved that deceased had made threats to kill him. These threats were communicated to him by the parties to whom the alleged threats were made.

Appellant took the witness stand and testified that on approaching the deceased, the deceased drew his pistol and he, appellant, grabbed it; that they tusseled over the pistol and during the tussel, he shot the deceased three or four times, but not with the intent to kill him, merely for the purpose of getting the deceased off of him. When the pistol was empty, he cut and stabbed him with no intent to kill him but merely to get the deceased off of him. The foregoing is a brief summary of the salient facts proven on the trial. We deem the evidence sufficient to sustain the judgment of conviction.

Appellant's only objection to the court's charge is one complaining of the court's refusal to instruct the jury to acquit him.

Appellant brings forward five bills of exception, the first of which complains of the action of the trial court in declining to sustain his challenge to the array of the grand jury based

on the ground that ten members of the grand jury which returned the indictment against him had previously served on a purported grand jury. It is his contention that they had heard the evidence and had concluded that he was guilty; that they were prejudiced against him and had so expressed themselves before they were empaneled and therefore were disqualified. The evidence pertaining to the ground of challenge is not brought forward by a separate statement of facts but enough is embraced in the bill of exception to show that on August 11, 1947, at the regular August Term of the 72nd District Court in and for Lubbock County, certain named persons appeared in obedience to a summons to serve as grand jurors for the August Term, 1947. Then follows the names of 12 men who purportedly were qualified, sworn, and empaneled as grand jurors and who returned forty-two indictments including the one against appellant charging him with the offense of murder of Julio Herrera, whereupon the grand jury was discharged. However, for some reason not disclosed by the bill, the judge concluded that the grand jury, as then constituted, was illegal and ordered that all of the grand jurors who had been duly selected by a jury commission, appointed at a previous term, to be summoned. In obedience to the order of the court, they reported for grand jury service on the 20th day of August, 1947. Of the sixteen persons who reported for grand jury service, twelve men were selected and duly sworn as grand jurors for said term of court. Ten of the twelve men had been members of the purported grand jury which had previously returned forty-two indictments and who had been discharged by the court. In the absence of a showing to the contrary, the presumption obtains that the court was legally justified in discharging the purported grand jury, dismissing the indictments returned by it, and empaneling a grand jury from the sixteen persons who, at the preceding term, had been selected by a jury commission for grand jury service. Appellant was indicted by this grand jury.

The record fails to disclose any evidence to support appellant's allegation of prejudice on the part of the grand jurors. However, we do not wish to be understood as holding that a grand juror would be disqualified to sit as a grand juror because he knew some facts relative to a certain offense. Appellant seems to take the position here that the same qualifications apply to grand jurors as to petit jurors which is not the case. The qualifications of grand jurors are specifically prescribed by Art. 339, P. C., and this court would not be authorized to extend the legislative act by judicial construction so as to conform to the qualifications of petit jurors. See Staton v. State, 93 Tex. Cr. R. 356 (248 S. W. 356).

Appellant also filed a motion to quash the indictment on the ground of race discrimination. He alleged in his motion that he was a member of the Mexican race; that there were many Mexican people in Lubbock County who possessed all the re-required qualifications of grand jurors, but that the jury commission, in the selection of the grand jury, intentionally and designedly failed and refused to select any person of the Mexican race as a grand juror, etc. The court heard evidence relative to this issue but it falls far short of showing that there were any Mexicans in Lubbock County who were qualified to serve as grand jurors. It is not shown that they were freeholders in the state, householders in the county, nor that they could read and write the English language. A similar question is discussed in the case of Sanchez v. State, 147 Tex. Cr. R. 436 (181 S. W. (2d) 87), and we see no need to reiterate what we have said in that case. We therefore overrule his contention.

Appellant's next complaint relates to the court's action in permitting the state, over his timely objection, to introduce in evidence his purported voluntary confession. He contended that it was made under duress and that it was not properly signed since he merely placed his mark "X" to it instead of his name. The state proved that appellant could not write; that the confession was reduced to writing; that it was read over to him whereupon he said that it was true and correct. He then placed his mark thereon in the presence of two persons who were not peace officers who subscribed their names thereto as attesting witnesses. Art. 727, C. C. P., provides as follows:

"* * * If the defendant is unable to write his name, and signs the statement by marking his mark, such statement shall not be admitted in evidence, unless it be witnessed by some person other than a peace officer, who shall sign the same as a witness."

It appears that the article quoted was complied with. However, the careful trial judge instructed the jury that the purported confession of the defendant introduced in evidence could not be considered by them for any purpose, as evidence against defendant, unless they believed from the evidence, beyond a reasonable doubt, that such confession was freely made by the defendant, without compulsion or persuasion and that it was made in writing and the defendant made his mark thereon, and that the same was witnessed by some person other than a peace officer, as a witness, and that defendant was warned by Pat Davidson that he did not have to make any statement at all, and that any statement made by him might be used against him on his trial for the offense of killing Julio Herrera, and that he,

the defendant, understood the contents of such statement, or if they had a reasonable doubt as to whether defendant understood the same, to wholly disregard said purported confession. Although the evidence raising the issue of duress and want of understanding of the written confession is meager, the court submitted the issues to the jury and we think properly so.

Finding no reversible error in the record, the judgment of the trial court is affirmed.

Opinion approved by the Court.

### ON MOTION FOR REHEARING.

GRAVES, Judge.

Appellant again contests the invalidity of the grand jury which found the indictment on the ground that ten of these grand jurors had served on the first panel that evidently found an indictment against him at the same term of the court, and he says, therefore, that having already previously heard the testimony against him, they were prejudiced against him and were not fair jurors. Evidently the trial court, fearing some irregularity or error in the proceedings relative to the summoning and impaneling of the first grand jury, caused them to be again summoned and assembled to perform their duties. Such practice is authorized by law, Art. 372, C. C. P., providing as follows:

"A grand jury discharged by the court for the term may be reassembled by the court at any time during the term. If one or more of them fail to reassemble, the court may complete the panel by impaneling other men in their stead in accordance with the rules provided in this chapter for completing the grand jury in the first instance."

It appears that two of such first grand jurors failed to appear or at least were not again selected, and the careful trial court proceeded to fill the panel under the statute above quoted, and the indictment against this appellant found by the first grand jury was dismissed.

The same sixteen men that were first summoned as prospective grand jurors were again summoned, and the grand jury returning this indictment was selected therefrom. This grand jury, when empaneled, was challenged by appellant on the ground of an alleged discrimination against appellant, who was a Mexican, and that no person of such blood was found thereon.

This challenge was overruled, and such action of the court is the basis of Bill of Exception No. 1.

Bill No. 2 is devoted exclusively to the alleged discrimination against the Mexican race. Appellant showed some twelve poll taxes paid by men of Mexican names, but went no further in showing whether or not they were qualified under the law to act as grand jurors. We do not think that any discrimination is shown under the proof here presented. See Lugo v. State, 136 Tex. Cr. R. 226, 124 S. W. (2d) 344.

Bill No. 3 complains because of the trial court's ruling in allowing the introduction of an alleged written statement on the part of appellant concerning the death of Julio Herrera, it being contended that same is shown to have been involuntarily made and signed under compulsion exercised by an officer. We quote that portion of the bill as qualified by the court and accepted by appellant as follows:

"The witness, Leroy Boling, Jr., testified that he was present when the defendant made his statement concerning the offense with which he is charged, and that they discussed the statement with the defendant for thirty or forty-five minutes, which conversations were in English, and the questions were directed to the defendant in English and he answered the questions in English, and did not at any time ask for an interpreter. He said that he understood English and could read English, but he couldn't write English. And that Capt. Davidson told him, 'If this is right, put a mark there. Sign your name,' and refer the Court to the statement of facts, pages 42, 43, and 44. And in addition thereto, in the Court's Main Charge, Par. 19, the jury was instructed to not consider the statement of the defendant for any purpose whatsoever unless they believed from the evidence beyond a reasonable doubt that the defendant understood the contents of such statement, and that such statement was freely made by the defendant without compulsion or persuasion, and refer the Court to Par. 19 of the Court's Main Charge, shown at page 21 of the transcript."

We think the court was correct in submitting such confession to the jury, guarded by his charge relative thereto, there being no objections filed to the charge.

The statement just above referred to seems to bear a cross mark or an "X" where the place for a signature is indicated, and the witnesses showed, as well as appellant testified, that he made the "X" or cross mark, although appellant says that he did so

at the direction of an officer. The signature line does not bear the name of the appellant; in fact it bears no name, but merely the mark, and it is therefore claimed to be an incomplete instrument and of no force and effect.

Art. 727, C. C. P. provides for such a contingency where one is unable to sign his name, which provision reads as follows:

"* * * If the defendant is unable to write his name, and signs the statement by making his mark, such statement shall not be admitted in evidence, unless it be witnessed by some person other than a peace officer, who shall sign the same as a witness."

The instrument in question is witnessed by Leroy Boling, Jr., Capt. E. L. Posey, D. R. McWilliams, and Harvey Shaw, the latter two persons not appearing to be peace officers.

We express the opinion that the making of this mark on the bottom of this instrument is a signature thereto. We find a similar question passed upon by the Supreme Court of California in the case of In re Walker's Estate, 42 Pac. Rep. 815, in which it is said:

"To 'sign', in the primary sense of the word, is to make any mark. To sign an instrument or document is to make any mark upon it in token of knowledge, approval, acceptance, or obligation. The signature is the sign thus made."

Again, in the case of Board of Trustees of Seventh St. Colored M. E. Church v. Campbell, 21 Southern, 184, the Supreme Court of Louisiana quoted from Sweet's Law Dictionary as follows:

"In the primary sense of the word, a person 'signs' a document when he writes or marks something on it in token of his intention to be bound by its contents. In the case of an ordinary person, signature is commonly performed by subscribing his name to the document, and hence 'signature' is frequently used as equivalent to 'subscription,' but any mark is sufficient if it shows an intention to be bound by the document. Illiterate persons commonly sign by making a cross."

In the instant case, we think appellant's signature to such instrument is found by his making a cross.

We are of the opinion that this cause was properly disposed of in our original opinion, and the motion will therefore be overruled.