**Opinion issued January 14, 2016**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-15-00121-CV

———————————

**RICHARD FAWCETT, KEVIN ROBERTS, DARRIN PITTS, GEORGE LILLARD, CHRISTOPHER MATTHEWS, ARMANDO FLORIDO, BILLY MORENO, DAVID VUKOVIC, KEN KIRKPATRICK, JAMES LEMONS, DOUGLAS HISSONG AND SALOMON LAHANA, Appellants**

**V.**

**ROBERT J. ROGERS, Appellee**

---

**On Appeal from the 113th District Court**
**Harris County, Texas**
**Trial Court Case No. 2014-51782**

---

**O P I N I O N**

Appellee, Robert J. Rogers, filed suit for defamation against all of the

appellants, Richard Fawcett, Kevin Roberts, Darrin Pitts, George Lillard,

Christopher Matthews, Armando Florido, Billy Moreno, David Vukovic, Ken Kirkpatrick, James Lemons, Douglas Hissong, and Salomon Lahana. The appellants filed motions to dismiss under Chapter 27 of the Texas Civil Practice and Remedies Code.[1] The trial court denied the motions. In three issues, the appellants argue (1) they proved that Rogers's defamation claims are governed by Chapter 27, (2) Rogers failed to present prima facie evidence of his claims against them, and (3) the lawsuit should have been dismissed under the doctrine of judicial non-interference.

We affirm, in part, and reverse and render, in part.

### Background

All of the parties to this appeal, with the exception of Lahana, are members and officers of Gray Masonic Lodge 329, in Houston, Texas. Rogers served as the treasurer for Gray Lodge from July 2011 to April 30, 2014. On August 6, 2014, all but two of the appellants, Lahana and Lillard, signed a document entitled "Charges of Masonic Disciplinary Violations," charging Rogers and two other members with violating several Masonic rules.

The document states that the charges "were public[ly] presented at the August 6th, 2014 stated meeting of Gray Lodge No. 329. . . . in the presence of R.W. Dennis Billings District Deputy Grand Master, during his official visit to the lodge." The document also announced that everyone who "affixed their names" to the document

---

[1]    *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(a) (Vernon 2015).

2

were "in agreement to these charges." The details of the charges asserted against Rogers claimed that, among other things, he had (1) "violated his masonic Obligation wherein he promised he would not cheat wrong or defraud a Brother Master Mason or Master Masons Lodge, etc."; (2) "misappropriated funds therefore, cheating and defrauding Gray Lodge by signing a check . . . and using Gray lodge funds for personal jewelry without the lodges['] consent"; and (3) allowed another member of the lodge to sign a check after that member had been removed as a signer on the bank account. Lahana was listed as a potential witness regarding these allegations.

In response to the masonic charges, Rogers filed suit against the people who signed the charging document and Lahana. Rogers claimed that the allegations against him in the charging document were defamatory.

After Rogers filed suit, certain members of the lodge, including Lillard, sent emails discussing the suit. In one email in the exchange, Lillard suggested to Roberts that Roberts should contact the lodge's insurance company, deny any wrongdoing, and inform the insurance company that Rogers may have committed a "swoop and squat" scheme. Specifically, Lillard wrote,

> I also recommend that you order (in writing) Mark to convey to the insurance company that we [heartily] deny any liability or wrong doing and (this is important) that the suing party is the same person who insisted on the lodge tak[ing] out heavy liability coverage. Don't say "it is" but this might be a variation of the old "swoop & squat" where the claimant "sets up" the claim ahead of time.

Lillard later included others officers of the lodge on the email chain containing the email in question. Soon after, Rogers amended his petition, naming Lillard as a defendant and claiming that the email in question was defamatory.

Once they answered, the defendants filed motions to dismiss based on Chapter 27 of the Civil Practice and Remedies Code.[2] They also argued that the trial court should dismiss the suit based on the doctrine of judicial non-interference.

Rogers responded to the motion, asserting that Chapter 27 did not apply and that he had sufficient proof of his claims to prevent dismissal. One of Rogers's exhibits attached to the motion was his affidavit. In it, he averred that the parties that charged him with financial wrongdoing never consulted or involved the lodge's treasurer. He also asserted that all of the defendants that signed the charging document knew an annual audit of the organization was underway and that two of the signers were on the audit committee. He testified that that the audit—completed two weeks after the charges—found no financial wrongdoing. The record also includes a letter stating that the grand master, who oversaw the investigation of the charges asserted against Rogers, "determined that the allegations do not rise to the level of a Masonic disciplinary violation. He dismissed the allegations."

After a hearing, the trial court denied the motion to dismiss.

---

[2]     *See* Civ. Prac. & Rem. § 27.003(a).

4

**Motion to Dismiss**

In their first two issues, the appellants argue that the trial court erred by denying their motion to dismiss because they proved that Rogers's claims are subject to Chapter 27 and because Rogers failed to establish the prima facie elements of his defamation claims. Before analyzing these issues, it is necessary to distinguish between certain appellants. Ten of the appellants signed the document charging Rogers with misappropriation of the lodge's funds. We refer to them collectively as the "Signing Defendants." The other two appellants, Lillard and Lahana, will be referred to individually.

## A.    Standard of Review

We review de novo a trial court's ruling on a motion to dismiss pursuant to Chapter 27 of the Texas Civil Practice and Remedies Code. *Better Bus. Bureau of Metro. Hous., Inc. v. John Moore Servs., Inc.*, 441 S.W.3d 345, 353 (Tex. App.— Houston [1st Dist.] 2013, pet. denied); *Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd.*, 416 S.W.3d 71, 80 (Tex. App.—Houston [1st Dist.] 2013, pet. denied); *Serafine v. Blunt*, 466 S.W.3d 352, 357 (Tex. App.—Austin 2015, no pet.).

## B.    Whether the Claims Fall Under Chapter 27

Chapter 27 of the Civil Practice and Remedies Code allows parties to seek dismissal of certain types of claims filed against them unless the opposing party presents prima facie evidence of each element of those claims. *See* Tex. Civ. Prac.

& REM. CODE ANN. §§ 27.003(a), 27.005(b)–(c) (Vernon 2015). This involves a two-step process. *See* Prather & Bland, *Bullies Beware: Safeguarding Constitutional Rights Through Anti-SLAPP in Texas*, 47 TEX. TECH. L. REV. 725, 750–53 (2015). First, as it applies to this case, the moving party must show "that the legal action is based on, relates to, or is in response to the party's exercise of . . . the right of association." CIV. PRAC. & REM. § 27.005(b)(3). If the movant carries this burden, the non-movant must then submit prima facie proof of each essential element of the applicable claims.[3] *Id.* § 27.005(c).

Rogers brought defamation claims against each of the appellants. The appellants argue that the defamation claims relate to their exercise of the right of association. A legal action that "is based on, relates to, or is in response to a party's exercise of . . . the right of association" falls under the protections of Chapter 27. *See id.* § 27.003(a); *accord* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b)(3).

---

[3]   In some instances, there is a third step to the process. *See* Prather & Bland, *Bullies Beware: Safeguarding Constitutional Rights Through Anti-SLAPP in Texas*, 47 Tex. Tech. L. Rev. 725, 754 (2015). If the non-movant carries its burden on establishing the elements of the applicable claims, the movant can seek dismissal based on applicable affirmative defenses. TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(d) (Vernon 2015). While the movants in this case asserted some affirmative defenses at trial, they have not argued on appeal that any of the affirmative defenses form a reason to reverse the trial court's ruling. *See* TEX. R. APP. P. 38.1(i) (requiring briefs to contain clear and concise arguments with appropriate citation to legal authority and record); *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993) ("We have held repeatedly that the courts of appeals may not reverse the judgment of a trial court for a reason not raised in a point of error."). Accordingly, this provision is not at issue on this appeal.

6

"'Exercise of the right of association' means a communication between individuals who join together to collectively express, promote, pursue, or defend common interests." TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(2) (Vernon 2015).

All the parties to this suit are Masons. All but Lahana are members of the same lodge. For all of the appellants except Lillard, the facts giving rise to the suit stem from the Signing Defendants signing a document accusing Rogers of violations of the organization's rules and seeking review within the organization of the allegations.[4] Rogers claimed in his petition that the Signing Defendants and Lahana defamed him by making the allegations within that document.

The claim of defamation against Lillard stems from an email discussing the allegations asserted against Rogers. In one email in the exchange, Lillard suggested to Roberts that Roberts should contact the lodge's insurance company, deny any wrongdoing, and inform the insurance company that Rogers may have committed a "swoop and squat" scheme. Lillard later included other officers of the lodge on the email chain containing the email in question.

The facts of all of these allegations are similar to those in *Combined Law Enforcement Associations of Texas v. Sheffield*, No. 03-13-00105-CV, 2014 WL 411672 (Tex. App.—Austin Jan. 31, 2014, pet. denied) (mem. op.). In that case, Sheffield had been a "field service representative" for CLEAT, a labor union that

---

[4]     Lahana did not sign the document but was listed as a witness within the document.

represents law enforcement officers. *Id.* at *1. At a certain point, CLEAT fired Sheffield. *Id.* At the time, Sheffield had his work laptop at his house. *Id.* Before returning the laptop, Sheffield deleted certain files. *Id.* The propriety of deleting those files became the source of many disputes between the parties. *See id.* at *1–*2.

Ultimately, Sheffield brought defamation actions against CLEAT and its executive director, Burpo. *Id.* at *2. In the suit, Sheffield alleged that CLEAT and Burpo defamed him by stating that "Sheffield committed criminal acts in connection with his employment with CLEAT." *Id.* CLEAT and Burpo filed a motion to dismiss under Chapter 27, claiming the statements related to their right of association. *Id.* The Austin Court of Appeals held that the statements made among the members of CLEAT fell under Chapter 27. *See id.* at *5. The members of CLEAT had "joined together . . . to collectively express, promote, or defend the common interests of police officers." *Id.* The allegations of Sheffield's wrongdoing during and immediately following his employment with CLEAT "plainly [were] based on, relate[d] to, or [were] in response to these communications made in the exercise of the right of association." *Id.*

We hold the same is true here. All of the communications about which Rogers complains were made among Masons. All of the defendants except for Lahana were members of the same lodge. Lahana's basis for being sued was his involvement in

8

the activities of the Gray Lodge. All of the complained-of communications concerned whether Rogers had violated internal rules of the organization. The allegedly defamatory document that the Signing Defendants signed sought review within the organization of Rogers's actions.

It is undisputed that all of the parties, as members of the Masons, have joined together to collectively express, promote or defend common interests. *See* CIV. PRAC. & REM. § 27.001(2). All of the allegedly defamatory statements were between individuals seeking to defend their common interests. *See id.* And Rogers's claims are based on these statements. *See id.* §§ 27.003(a), 27.005(b)(3). Accordingly, we hold that the appellants carried their burden of establishing that Chapter 27 applies.

Rogers argues that Chapter 27 does not apply because the chapter's protections are limited to *public* communications or participation in government. Because the communications at issue were only between private parties, Rogers argues, Chapter 27 does not apply to his claims.

The Supreme Court of Texas, however, has recently rejected this argument. In *Lippincott*, the court reviewed a lower-court's holding that Chapter 27 "only applies to communications that are public in form." *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 508 (Tex. 2015). The Supreme Court of Texas observed that the statute defined communication and did not limit the meaning to public communications. *Id.* at 509 (citing CIV. PRAC. & REM. § 27.001(1)). "Had the Legislature intended to

limit the Act to publicly communicated speech, it could have easily added language to that effect. In the absence of such limiting language, we must presume that the Legislature broadly included both public and private communication." *Id.* (citations omitted). Accordingly, the private nature of the communications about which Rogers complains does not affect the applicability of Chapter 27 to his claims.

Rogers also argues that the chapter does not apply because "defamatory statements are not protected under" the chapter. This ultimately concerns, however, whether Rogers established the prima facie elements for his defamation claims, not whether the claims fall under the chapter. *See* CIV. PRAC. & REM. § 27.005(b)–(c).

We sustain the appellants' first issue.

## C. Prima Facie Elements of the Defamation Claims

The trial court denied the appellants' motion to dismiss on the express conclusion that Chapter 27 did not apply to Rogers' claims. We have reached the opposite conclusion. Because this is a de novo review, however, we are not constrained by the trial court's conclusions. *See Markel Ins. Co. v. Muzyka*, 293 S.W.3d 380, 385 (Tex. App.—Fort Worth 2009, no pet.). Accordingly, we continue our review of the motion and will affirm if the trial court reached the correct result. *See id.* (citing *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002)).

10

In their second issue, the appellants argue that Rogers failed to establish prima facie proof for each element of his defamation claims. "The court may not dismiss a legal action under this section if the party bringing the legal action establishes by clear and specific evidence a prima facie case for each essential element of the claim in question." CIV. PRAC. & REM. § 27.005(c). Rogers asserted defamation claims against each of the appellants. In a suit by a private person against a non-media defendant, the elements for a defamation claim are (1) the publication of a statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the requisite degree of fault, and (4) damages, in some cases. *See In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015) (identifying elements, but including burden of proving statement is false); *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995) (holding, for private-individual plaintiff against a non-media defendant, falsity of statement is generally presumed and truth of statement is affirmative defense). The requisite degree of fault for a private-individual plaintiff is negligence. *Lipsky*, 460 S.W.3d at 593.

Because the allegations against the Signing Defendants are the same, we will consider Rogers's claims against them together.

### 1.     The Signing Defendants

The document charging Rogers of wrongdoing begins by recognizing that charges were filed on behalf of Gray Lodge against Rogers and others. The

11

document states that the charges "were public[ly] presented at the August 6th, 2014 stated meeting of Gray Lodge No. 329. . . . in the presence of R.W. Dennis Billings District Deputy Grand Master, during his official visit to the lodge." In his affidavit responding to the motion to dismiss, Rogers also averred that the charges were read aloud during a lodge meeting and then presented to Billings. The document also announced that everyone who "affixed their names" to the document were "in agreement to these charges."

The details of the charges asserted against Rogers claimed that, among other things, he had (1) "violated his masonic Obligation wherein he promised he would not cheat wrong or defraud a Brother Master Mason or Master Masons Lodge, etc."; (2) "misappropriated funds therefore, cheating and defrauding Gray Lodge by signing a check . . . and using Gray lodge funds for personal jewelry without the lodges['] consent"; and (3) allowed another member of the lodge to sign a check after that member had been removed as a signer on the bank account.

The document in question shows by itself, then, that the Signing Defendants agreed to allegations of the charges and that the details of the charges were publicly presented at a lodge meeting. The charges asserted that Rogers had misappropriated funds, spent those funds on personal goods, and allowed unauthorized signing of checks. *See id.* at 593 (holding element of defamation is publication of statements of fact to third party).

Certain factual assertions, if untrue, are deemed to be defamatory per se. *See id.* at 596. Such assertions include "accusing someone of a crime, of having a foul or loathsome disease, or of engaging in serious sexual misconduct" as well as "remarks that adversely reflect on a person's fitness to conduct his or her business or trade." *Id.* Misappropriating funds and permitting unauthorized withdrawals of funds is a crime. *See Morrill v. Cisek*, 226 S.W.3d 545, 550 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (holding accusing someone of misappropriating funds is defamatory per se); TEX. PENAL CODE ANN. § 31.03(a) (Vernon Supp. 2015) (establishing crime of theft occurs when a person unlawfully appropriates property with intent to deprive owner of property). All of these defamatory statements concerned Rogers. *See Lipsky*, 460 S.W.3d at 593 (holding defamation requires proof that statement concerned plaintiff).

Because Rogers is a private individual, his burden is to prove the defamatory statements were published with negligence. *See id.* "Texas courts have defined negligence in the defamation context as the 'failure to investigate the truth or falsity of a statement before publication, and [the] failure to act as a reasonably prudent [person].'" *Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd.*, 416 S.W.3d 71, 85 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (quoting *Marathon Oil Co. v. Salazar*, 682 S.W.2d 624, 631 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.)).

Rogers averred in his affidavit that the Signing Defendants did not investigate the charges before signing the document. "[T]here was no consultation or involvement of the club's treasurer." He asserted that all of the Signing Defendants knew an annual audit of the organization was underway and that two of the Signing Defendants were on the audit committee. He testified that the audit—completed two weeks after the charges—found no financial wrongdoing. The record also shows that the grand master, who oversaw the investigation of the charges asserted against Rogers, "determined that the allegations do not rise to the level of a Masonic disciplinary violation. He dismissed the allegations." We hold this is prima facie proof that the Signing Defendants failed to investigate the truth or falsity of the allegations before publishing the documents. *See Lipsky*, 460 S.W.3d at 593 (holding element of defamation for private individual is defendants acted with negligence); *Newspaper Holdings*, 416 S.W.3d at 85 (holding that failure to investigate truth or falsity of published allegations is negligence).

The final element is damages. *See Lipsky*, 460 S.W.3d at 593. For a defamation per se claim, however, proof of damages is not an *essential* element of the claim. *Id.* at 596. A plaintiff is only required to present proof of the essential elements of his claim. CIV. PRAC. & REM. § 27.005(c) (requiring plaintiff to present prima facie evidence to support each essential element of claim). Because we have

14

held that Rogers has presented proof of a defamation per se claim, Rogers was not required to offer proof of damages. *See Lipsky*, 460 S.W.3d at 596.

We overrule the appellants' second issue as it applies to the Signing Defendants.

## 2.    Lahana

According to the evidence presented by the parties, Lahana's only involvement in the alleged defamation of Rogers was being listed as a potential witness by the Signing Defendants in the document specifying the charges against Rogers. Rogers argues,

> Appellant Lahana authorized and consented to his name being listed as a witness on the document containing the defamatory statements. By doing so, he necessarily had approved and accepted the contents of the document. By allowing his name to be listed on the document containing the defamatory statements, Appellant Lahana effectively signed the document and therefore published the defamatory statements.

The only authority Rogers cites to support this claim is a criminal case from 1948. *See Bustillos v. State*, 213 S.W.2d 837, 842 (Tex. Crim. App. 1948). *Bustillos*, in turn, relies on an 1896 Louisiana Supreme Court case for the proposition that a person can sign a document by making some mark on the document "'in token of his intention to be bound by its contents.'" *Id.* (quoting *Bd. of Trustees of Seventh St. Colored M.E. Church v. Campbell*, 21 So. 184, 187 (La. 1896)). Even by the logic of these cases, however, Rogers still has no proof that Lahana signed the

15

document.  The portion of the document identifying Lahana as a witness was typed.  There is no proof that Lahana typed his name or any other portion of the document; nor is there proof that any typing Lahana may have done was meant to convey an intention to be bound by the contents of the document.

We hold Rogers failed to carry his burden of presenting prima facie proof of a defamation claim against Lahana.  We sustain the appellants' second issue as it applies to Lahana.

### 3.     Lillard

The action against Lillard concerns statements made in an email chain.  In one email in the exchange, Lillard suggested to Roberts that Roberts should contact the lodge's insurance company, deny any wrongdoing, and inform the insurance company that Rogers may have committed a "swoop and squat" scheme.  Specifically, Lillard wrote,

> I also recommend that you order (in writing) Mark to convey to the insurance company that we [heartily] deny any liability or wrong doing and (this is important) that the suing party is the same person who insisted on the lodge tak[ing] out heavy liability coverage.  Don't say "it is" but this might be a variation of the old "swoop & squat" where the claimant "sets up" the claim ahead of time.

Rogers argues the last statement accuses him of committing insurance fraud.  We disagree.

Lillard did not assert that Rogers committed insurance fraud.  Instead, he advised someone within the organization to warn their insurance provider that, based

16

on the allegations, Rogers *might* have committed insurance fraud. "Under the First Amendment there is no such thing as a false idea." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339, 94 S. Ct. 2997, 3007 (1974). Subjective assertions are not actionable. *Vice v. Kasprzak*, 318 S.W.3d 1, 18 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). Lillard did not, then, make a statement of fact; he only suggested warning the insurance company of the possibility that insurance fraud might have occurred based on the allegations of the Signing Defendants. Indeed, Lillard specifically emphasized the need to say it was a possibility instead of asserting it as a fact. We hold a reasonable person could not determine that Lillard's statement was capable of defamatory meaning. *See id.* (holding determination of whether publication is actionable statement of fact depends on reasonable person's perception of entirely of publication).

We hold Rogers failed to carry his burden of presenting prima facie proof of a defamation claim against Lillard. We sustain the appellants' second issue as it applies to Lillard.

**Judicial Non-Interference**

In their third issue, the appellants argue the trial court should have dismissed the claims against them based on the doctrine of judicial non-interference.

This is an interlocutory appeal. "A party may not appeal an interlocutory order unless authorized by statute." *Bally Total Fitness Corp. v. Jackson*, 53 S.W.3d

352, 352 (Tex. 2001).  An appellate court's jurisdiction over an interlocutory appeal is limited to the scope permitted in the statute.  *Astoria Indus. of Iowa, Inc. v. SNF, Inc.*, 223 S.W.3d 616, 626 (Tex. App.—Fort Worth 2007, pet. denied); *see also CMH Homes v. Perez*, 340 S.W.3d 444, 447 (Tex. 2011) (holding appellate courts strictly apply statutes granting interlocutory appeals because they are narrow exceptions to general rule against appealing interlocutory orders).  Issues outside that scope cannot be considered in the interlocutory appeal, even if presented in the same motion or other relief is granted in the same order.  *See Astoria Indus.*, 223 S.W.3d at 626.  Interlocutory appeals of a trial court's ruling on a motion to dismiss pursuant to Chapter 27 are statutorily authorized.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.008 (Vernon 2015), § 51.014(a)(12) (Vernon Supp. 2015).  The authority is limited to motions to dismiss based on Chapter 27, however.  *See id.* §§ 27.008, 51.014(a)(12).  Chapter 27 does not encompass dismissals based on the doctrine of judicial non-interference.  Accordingly, it is not a grounds for presenting this issue in an interlocutory appeal.

An exception to this rule is that certain jurisdictional matters can be considered for the first time on appeal even when they are outside the scope of the interlocutory appeal.  *See Rusk State Hosp. v. Black*, 392 S.W.3d 88, 94–96 (Tex. 2012).  Those cases, however, concern questions of the trial court's subject-matter

jurisdiction or matters that "implicate[] a court's subject-matter jurisdiction over pending claims." *Id.* at 95.

Some courts have held that the doctrine of judicial noninterference is a jurisdictional rule implicating subject-matter jurisdiction. *See Tex. Thoroughbred Breeders Ass'n v. Donnan*, 202 S.W.3d 213, 223–24 (Tex. App.—Tyler 2006, pet. denied); *Juarez v. Tex. Ass'n of Sporting Officials El Paso Chapter*, 172 S.W.3d 274, 278–79 (Tex. App.—El Paso 2005, no pet.). The Fourteenth Court of Appeals has disagreed with this assessment, however. *See Stevens v. Anatolian Shepherd Dog Club of Am., Inc.*, 231 S.W.3d 71, 75 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). "Courts have not declined to assert jurisdiction over disputes involving non-profit associations because they lack subject matter jurisdiction; rather they have declined to exercise jurisdiction more for various policy reasons such as judicial economy." *Id.*

We agree with the analysis of the Fourteenth Court of Appeals. The decision about whether to apply the doctrine is determined by balancing the rights of an organization to enact its own rules and prescribing qualifications for membership against any valuable rights of property interests at stake. *See id.* at 75–76. Subject-matter jurisdiction is not established or disproved by weighing policy concerns. *See City of DeSoto v. White*, 288 S.W.3d 389, 393 (Tex. 2009) ("The failure of a jurisdictional requirement deprives the court of the power to act (other than to

19

determine that it has no jurisdiction), and ever to have acted, as a matter of law."). Because the doctrine of judicial non-interference does not implicate subject-matter jurisdiction and because there is no statutory authority allowing interlocutory review of a motion to dismiss based on the doctrine of judicial non-interference, we lack jurisdiction to consider this argument.

We overrule the appellants' third issue.

## Conclusion

We reverse the trial court's order denying the motion to dismiss as it applies to Salomon Lahana and George Lillard. We affirm the remainder of the order. We remand to the trial court for dismissal of Salomon Lahana and George Lillard.

Laura Carter Higley
Justice

Panel consists of Justices Jennings, Higley, and Brown.

Justice Jennings, concurring in part and dissenting in part.