# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-20-00380-CV

**Liat Zilkha-Shohamy and Tal Shohamy, Appellants**

**v.**

**Lenore Vincent Corazza, Appellee**

### FROM THE 250TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-18-006883, THE HONORABLE DON R. BURGESS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellants Liat Zilkha-Shohamy and Tal Shohamy appeal from the district court's order denying their motion to dismiss under the Texas Citizens Participation Act ("TCPA"). *See* Tex. Civ. Prac. & Rem. Code § 27.003.[1]  In two issues on appeal, they assert that the district court erred in denying the motion to dismiss because (1) appellee Lenore Vincent Corazza failed to provide clear and specific evidence to support each essential element of a prima facie case of defamation; and (2) appellants established by a preponderance of the evidence each essential element of a valid defense to defamation.  We will affirm the district court's order.

---

[1] The TCPA was amended in the 2019 legislative session, but those amendments do not apply to this lawsuit, which was filed in 2018.  *See* Act of May 17, 2019, 86th Leg., R.S., ch. 378, §§ 11, 12, 2019 Tex. Gen. Laws 684, 687 (amendments to TCPA apply "only to an action filed on or after" September 1, 2019).  All references to the TCPA are to the version in existence at the time this suit was filed.

## BACKGROUND

Corazza was the former office manager for White Angel Animal Hospital, a veterinary clinic owned by Liat Zilkha-Shohamy and operated by Zilkha-Shohamy's husband, Tal Shohamy. Corazza's employment with the clinic ended on August 15, 2017.

In November 2018, Corazza sued appellants for defamation, alleging that on or about August 31, 2017, Shohamy "sent an email with false statements accusing [Corazza] of fraudulent schemes that included embezzlement from the practice." According to the allegations in Corazza's petition, "These false allegations of fraudulent schemes were widely made known among multiple clients and others" by appellants and that "[a]s a result of the false allegations, [Corazza] has been subjected to undue strict scrutiny" and "was terminated from subsequent employment because of the continuous attack[s] made by [appellants] to her new place of employment." Corazza alleged that the false statements "constitute defamation per se because they accuse [Corazza] of engaging in illegal activity and/or they directly bear on her fitness as a manager and employee." She further alleged that the statements were "defamatory because they tend to injure [Corazza]'s reputation in the veterinary community and expose her to public hatred, contempt, ridicule, and financial injury, and impeach her honesty and integrity." Corazza added that appellants "published the defamatory statements (calling Plaintiff a thief) with the knowledge that they were false or with substantial grounds for knowing that they might be false and with reckless disregard to whether they were true or false. These defamatory remarks were made, both spoken and in writing, to others who knew Plaintiff."

Appellants filed a motion to dismiss the suit pursuant to the TCPA. In the motion, appellants asserted that the allegedly false statements were protected by the TCPA as an exercise of their free-speech rights, "were true and/or substantially true when published and/or

2

[they] had a reasonable and good faith basis to believe such statements were true at the time of publication and in the manner published," "were opinions and/or a fair comment upon the underlying facts," and "were neither negligent, nor uttered with malice."

The district court held an evidentiary hearing on the motion to dismiss. Corazza was the sole witness to testify at the hearing. Corazza testified that she began working for the clinic in March 2014. When asked to describe the end of her employment, Corazza testified that she had decided to leave the clinic in August 2017 after she began having disagreements with Shohamy regarding some of his business decisions. Before Corazza quit, she had received a call from Zilkha-Shohamy, who "sounded distraught" and "said that there was [a] dollar raise" to Corazza's salary. Corazza testified that she told Zilkha-Shohamy, "Yeah, I know, that's something we had talked about—."[2] The next day, Corazza gave the clinic her two weeks' notice but was told that her employment with the clinic was terminated effective immediately.

Corazza testified that after her employment with the clinic ended, appellants told "multiple individuals" that Corazza had lied and stolen money from the clinic. When asked how this affected her reputation in the veterinary community, Corazza testified that she was hired by Bee Cave Veterinary Clinic in September 2017 but was fired in November 2017 when appellants filed a criminal theft charge against her and sued Corazza and her employer for stealing clients from appellants' clinic. Corazza was not able to find another job until September 2018, after the theft charge against her was dismissed. She testified that her current employer "just took a chance" on Corazza because "he was told by doctors in the community" that Corazza "was a

---

[2] Before Corazza could complete her sentence, counsel for appellants objected to hearsay. Although the district court overruled the objection, there was no further testimony elicited regarding the increase to Corazza's salary.

thief," and that Corazza had to "explain everything to [her] new staff." Corazza denied stealing anything from the clinic or appellants.

Dr. Jennifer Barker, a veterinarian formerly employed at appellants' clinic, provided an affidavit in which she explained that after she had been fired from the clinic, she learned that Corazza "ha[d] been fired for theft." She explained that the clinic "issued a very in-depth email that they sent out to all on their email list, dealing [with] why [Corazza] was fired and that nobody should listen to anything she has to say about the situation." Bonnie Threewit, a former employee at appellants' clinic, provided an affidavit in which she averred that after she had left the clinic, she "received an email regarding [Corazza] having stolen from the company." Stephanie Foster, a former employee at the Bee Cave Veterinary Clinic, provided an affidavit in which she stated that she had "personally witness[ed]" Shohamy make "false allegations" against Corazza, although she did not explain the nature of the allegations.

Evidence submitted by appellants included a copy of the August 31, 2017 email that Corazza alleged was defamatory. The email, in its entirety, reads as follows:

> Good Afternoon White Angel Animal Hospital Family,
>
> We would like to inform our clients of a change in management at White Angel Animal Hospital. Due to financial discrepancies recently noted, Lenore is no longer employed with us.
>
> It has come to our attention that Lenore has communicated with several of the valued rescue groups and/or clients which we serve regarding our ability or willingness to continue the relationship. This is inaccurate and not a reflection of our values or intentions. Please disregard any communications that you receive from her in association with White Angel Animal Hospital as of August 15, 2017. We sincerely apologize for any inconvenience or hurt feelings that this may have caused to our valued clients and animal welfare groups. We want you to know that we appreciate your patience and loyalty during this difficult time as always.
>
> We will miss Lenore and we wish her the best of luck in her future endeavors!

If you have any questions or concerns, please feel free to give us a call. Dr. Zilkha will continue to be the primary veterinary practitioner at White Angel. Ali [Nelson, Corazza's replacement,] will be managing the hospital and will be more than happy to speak with anyone who needs assistance.

Sincerely,

Your Family at White Angel Animal Hospital

Other evidence presented by appellants included an affidavit by Zilkha-Shohamy, who explained her view of the circumstances surrounding Corazza's termination:

I was absolutely devastated to learn in August 2017 of a discrepancy with regard to Lenore's payroll account. I discovered from our HR payroll processor, Hill Country Payroll, that Lenore had increased her pay rate from $18 an hour to $19 an hour without authorization from me. Lenore's responses to me regarding the matter were unsatisfactory and defensive. After reviewing White Angel, PLLC's practice accounts, I also discovered further instances of abuse of the practice's business accounts which included an unauthorized discount of clinic services and the use of White Angel's business account to make a personal order for dog food. On or about August 15, 2017, I had to make the difficult decision to terminate Lenore Corazza from White Angel, PLLC.

Writ Baese, an employee with Hill Country Payroll, provided an affidavit in which he confirmed that "on or about July 31, 2017, Lenore V. Corazza, as the authorized payroll contact for White Angel, submitted a payroll worksheet to Hill Country Payroll that changed her pay rate from $18 an hour to $19 an hour."

Zilkha-Shohamy further averred that Corazza had "refused to cooperate" with the clinic's end-of-employment policies and had interfered with the clinic's business relationships by sending unauthorized emails to the clinic's clients. It was this interference, Zilkha-Shohamy explained, that prompted the email to the clinic's clients regarding Corazza's departure. Ali Nelson, the clinic's office manager after Corazza, provided an affidavit in which she explained that she had discovered that Corazza had sent unauthorized emails to clients of the clinic and

5

engaged in other behavior that was harmful to the clinic. Shohamy provided an affidavit in which he averred that "Corazza sent emails to White Angel clients claiming the clinic was discontinuing its relationship with the clients" and explained that "[i]t became necessary for White Angel to address this problem by sending a statement to White Angel Animal Hospital clients setting the record straight regarding Lenore Corazza's termination and her unauthorized access to White Angel's email accounts." He also denied personally sending the email to the clients but acknowledged that the clinic did so.

At the conclusion of the hearing, the district court denied appellants' motion to dismiss. This interlocutory appeal followed. *See id*. § 51.014(a)(12).

## TCPA FRAMEWORK AND STANDARD OF REVIEW

"The Legislature enacted the TCPA 'to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury.'" *In re Panchakarla*, 602 S.W.3d 536, 538 (Tex. 2020) (orig. proceeding) (quoting Tex. Civ. Prac. & Rem. Code § 27.002). To accomplish this, the TCPA authorizes "expedited consideration of any suit that appears to stifle the [movant]'s communication on a matter of public concern." *Id*. (quoting *In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015) (orig. proceeding)). Thus, "[i]f a legal action is based on, relates to, or is in response to a party's exercise of the right of free speech, right to petition, or right of association, that party may file a motion to dismiss the legal action." Tex. Civ. Prac. & Rem. Code § 27.003.

"The statute requires a three-step decisional process." *Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 132 (Tex. 2019). "First, the party moving for dismissal must show, by a preponderance of the evidence, that the 'legal action is based on, relates to, or is in response to a [movant]'s exercise of the right of free speech.'" *Dallas Morning News, Inc. v. Hall*, 579 S.W.3d 370, 376 (Tex. 2019) (quoting Tex. Civ. Prac. & Rem. Code § 27.003(a)). Second, "[t]he burden then shifts to the plaintiff to establish 'by clear and specific evidence a prima facie case for each essential element of the claim in question.'" *Id.* (quoting Tex. Civ. Prac. & Rem. Code § 27.005(c)). Third, the TCPA "requires a court to dismiss the legal action if 'the moving party establishes by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim.'" *Id.* (quoting Tex. Civ. Prac. & Rem. Code § 27.005(d)). "If the plaintiff fails to carry [her] burden—or if the movant establishes the essential elements of a valid defense under section 27.005(d)—the trial court must dismiss the suit." *Id.* at 377.

"In deciding if dismissal is warranted, we consider all the 'pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based.'" *Id.* (quoting Tex. Civ. Prac. & Rem. Code § 27.006(a)). Whether the parties met or failed to meet their burdens of proof under the TCPA is a question of law that we review de novo. *See id.* "We also review de novo, under the TCPA, 'whether a nonmovant has presented clear and specific evidence establishing a prima facie case for each essential element of the challenged claims.'" *Landry's, Inc. v. Animal Legal Defense Fund*, ___ S.W.3d ___, 2021 WL 2021130, at \*2 (Tex. May 21, 2021) (quoting *Serafine v. Blunt*, 466 S.W.3d 352, 357 (Tex. App.—Austin 2015, no pet.)).

"The words 'clear' and 'specific' in the context of [the TCPA] have been interpreted respectively to mean, for the former, '"unambiguous," "sure," or "free from doubt"' and, for the latter, '"explicit"' or '"relating to a particular named thing."'" *Lipsky*, 460 S.W.3d at 590 (quoting *KTRK Television, Inc. v. Robinson*, 409 S.W.3d 682, 689 (Tex. App.—Houston [1st Dist.] 2013, pet. denied)). A prima facie case "refers to evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted." *Id.* "It is the 'minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true.'" *Id.* (quoting *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004) (orig. proceeding) (per curiam)). A court may not dismiss a legal action if the nonmovant establishes "a prima facie case for each essential element of the claim in question" unless the movant establishes "by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim." Tex. Civ. Prac. & Rem. Code § 27.005(c), (d). In determining whether the nonmovant has met this burden, the court views the evidence in the light most favorable to the nonmovant. *Warner Bros. Entm't, Inc. v. Jones*, 538 S.W.3d 781, 801 (Tex. App.—Austin 2017), *aff'd*, 611 S.W.3d 1 (Tex. 2020).

## DISCUSSION

### Prima Facie Case for Defamation

Corazza does not dispute that appellants satisfied their initial burden to show that her legal action is subject to the TCPA. Thus, under the decisional framework summarized above, the burden shifted to Corazza to present clear and specific evidence establishing a prima facie case for each essential element of the challenged claim of defamation. *See Hall*,

8

579 S.W.3d at 377 (citing Tex. Civ. Prac. & Rem. Code § 27.005(c)). In their first issue, appellants assert that Corazza failed to meet that burden.

Defamation occurs when: "(1) the defendant published a false statement; (2) that defamed the plaintiff; (3) with the requisite degree of fault regarding the truth of the statement (negligence if the plaintiff is a private individual); and (4) damages (unless the statement constitutes defamation per se)." *D Mag. Partners, L.P. v. Rosenthal*, 529 S.W.3d 429, 434 (Tex. 2017) (citing *Lipsky*, 460 S.W.3d at 593; *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998)). "Defamation per se refers to statements that are so obviously harmful that general damages, such as mental anguish and loss of reputation, are presumed." *Lipsky*, 460 S.W.3d at 596.

The first element, falsity, is presumed in cases involving private plaintiffs suing nonmedia defendants. *See Fawcett v. Grosu*, 498 S.W.3d 650, 660–61 (Tex. App.—Houston [14th Dist.] 2016, pet denied) (op. on reh'g); *see also Texas Jewelers Ass'n v. Glynn*, No. 03-17-00771-CV, 2018 WL 5305721, at *4 n.6 (Tex. App.—Austin Oct. 26, 2018, no pet.) (mem. op.). The second element, that the statements defamed the plaintiff, is also satisfied here. Appellants sent an email to their clients informing them that Corazza was no longer employed with the clinic "[d]ue to financial discrepancies recently noted." Because the email provided no details, the clients could draw their own conclusions regarding the nature of the "financial discrepancies," which could have been anything ranging from financial mismanagement to theft. However, because the email cited the financial discrepancies as the reason why Corazza had been fired from the clinic, the clinic's clients likely inferred that the issue was serious and that, even if Corazza had committed an act other than theft, the discrepancies nevertheless reflected negatively on Corazza's professional abilities as an office manager and employee. Additionally,

9

the email also accused Corazza of sending communications to clinic clients that were "inaccurate and not a reflection of [the clinic's] values or intentions." From this statement, the clinic's clients could have further inferred that Corazza was dishonest, thus making it more likely that the financial discrepancies that the clinic accused her of committing were serious. We conclude that the email provides clear and specific evidence that appellants made statements that were defamatory per se. *See id.* (observing that "[a]ccusing someone of a crime" or making "remarks that adversely reflect on a person's fitness to conduct his or her business or trade" are considered defamatory per se); *see also Glynn*, 2018 WL 5305721, at *5 (concluding that statements accusing plaintiff of theft or misappropriation of funds qualified as defamation per se). Thus, Corazza did not have to present clear and specific evidence of the element of damages. *See Lipsky*, 460 S.W.3d at 596.

The final element of Corazza's prima facie case is appellants' degree of fault. Because Corazza is a private figure suing a nonmedia defendant, she must provide clear and specific evidence merely that appellants acted with negligence. *See id.* at 593; *Hancock v. Variyam*, 400 S.W.3d 59, 65 n.7 (Tex. 2013). "Texas courts have defined negligence in the defamation context as the 'failure to investigate the truth or falsity of a statement before publication, and [the] failure to act as a reasonably prudent [person].'" *Fawcett v. Rogers*, 492 S.W.3d 18, 27 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (alterations in original) (quoting *Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd.*, 416 S.W.3d 71, 85 (Tex. App.—Houston [1st Dist.] 2013, pet. denied)); *see Hoskins v. Fuchs*, 517 S.W.3d 834, 843 (Tex. App.—Fort Worth 2016, pet. denied).

Here, the primary basis of the "financial discrepancies" referenced in the email was Corazza's increasing her salary from $18 to $19 per hour. Corazza testified that when

10

Zilkha-Shohamy confronted her about the "dollar raise," Corazza told her that they had "talked about" it. Although no further testimony on this matter was elicited, this testimony, when viewed in the light most favorable to Corazza, provides at least some evidence that the salary increase was authorized. If appellants had authorized the salary increase, or if they knew that they had given Corazza reason to believe that the salary increase was authorized, then it would have been at least negligent for appellants to send their clients an email accusing Corazza of "financial discrepancies" based on that salary increase. *See Van Der Linden v. Khan*, 535 S.W.3d 179, 200–02 (Tex. App.—Fort Worth 2017, pet. denied) (explaining that evidence that defendant knew statement was false can also serve as evidence that defendant was at least negligent in making statement). We conclude that on this record, Corazza has satisfied her burden to establish a prima facie case for defamation.

We overrule appellants' first issue.

**Defenses**

In their second issue, appellants assert that they are entitled to dismissal because they established by a preponderance of the evidence each of the essential elements of their defenses to defamation. Specifically, appellants claim that they established the defenses of fair comment upon the underlying facts, opinion, and truth.[3]

---

[3] Appellants also assert, for the first time on appeal, that Corazza's claims are barred by the statute of limitations. *See* Tex. Civ. Prac. & Rem. Code § 16.002(a) (providing that "[a] person must bring suit for [defamation] not later than one year after the day the cause of action accrues"). However, the statute of limitations is an affirmative defense that must be pleaded and proven in the trial court. *See* Tex. R. Civ. P. 94; *Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 155 (Tex. 2015); *Zavala v. Franco*, 622 S.W.3d 612, 619 (Tex. App.—El Paso 2021, no pet. h.). Because appellants did not plead limitations in the court below, that defense has been waived. *See Fawcett v. Grosu*, 498 S.W.3d 650, 663 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (op. on reh'g).

11

### *Fair comment privilege*

"The fair comment privilege is an affirmative defense to a defamation action extending to publications that are 'reasonable and fair comment[s] on or criticism[s] of . . . matter[s] of public concern published for general information.'" *Rosenthal*, 529 S.W.3d at 434 (quoting Tex. Civ. Prac. & Rem. Code § 73.002(a), (b)(2)). However, the defense is inapplicable to nonmedia defendants such as appellants here. *See Casso v. Brand*, 776 S.W.2d 551, 554 (Tex. 1989); *see also Neely v. Wilson*, 418 S.W.3d 52, 56 (Tex. 2013) (listing fair comment privilege as defense available to *media* defendants). Accordingly, appellants would not be entitled to dismissal based on this defense.

### *Opinion*

"[S]tatements that cannot be verified, as well as statements that cannot be understood to convey a verifiable fact, are opinions." *Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 639 (Tex. 2018). "[S]tatements that are not verifiable as false cannot form the basis of a defamation claim." *Neely*, 418 S.W.3d at 62. Whether Corazza was fired "[d]ue to financial discrepancies recently noted" can be verified as either true or false based on the evidence presented and thus is not an opinion. *See Bentley v. Bunton*, 94 S.W.3d 561, 583–84 (Tex. 2002). Accordingly, appellants would not be entitled to dismissal based on this defense.

### *Truth*

"Truth is a defense to all defamation suits." *Neely*, 418 S.W.3d at 56. Under this defense, the defendant is required to prove that the statement is "substantially true." *Id*. at 62. "Minor inaccuracies do not amount to falsity so long as 'the substance, the gist, the sting, of the libelous charge be justified.'" *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 517 (1991). In

other words, "the substantial truth doctrine precludes liability for a publication that correctly conveys a story's 'gist' or 'sting' although erring in the details." *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 115 (Tex. 2000); *see McIlvain v. Jacobs*, 794 S.W.2d 14, 15–16 (Tex. 1990). Conversely, a publication may contain statements that are correct but "nevertheless convey a substantially false and defamatory impression by omitting material facts or suggestively juxtaposing true facts." *Turner*, 38 S.W.3d at 115; *see also Huckabee v. Time Warner Ent. Co.*, 19 S.W.3d 413, 425 (Tex. 2000) ("A broadcaster's omission of facts may be actionable if it so distorts the viewers' perception that they receive a substantially false impression of the event."). We are to construe the publication "as a whole in light of the surrounding circumstances based upon how a person of ordinary intelligence would perceive it." *Turner*, 38 S.W.3d at 114. "Consistent with this approach, under the 'substantial truth doctrine' a publication's truth or falsity depends on whether the publication 'taken as a whole is more damaging to the plaintiff's reputation than a truthful [publication] would have been.'" *Rosenthal*, 529 S.W.3d at 434 (quoting *KBMT Operating Co. v. Toledo*, 492 S.W.3d 710, 714 (Tex. 2016)).

As discussed above, the email stated that Corazza was "no longer employed" with the clinic "[d]ue to financial discrepancies recently noted." The email did not specify the nature of the financial discrepancies, but a person of ordinary intelligence would likely conclude that the discrepancies were serious enough to warrant Corazza's termination from the clinic. Moreover, because the same email also accused Corazza of sending communications to clinic clients that were "inaccurate and not a reflection of [the clinic's] values or intentions," a person of ordinary intelligence would likely conclude that appellants believed Corazza to be dishonest, which would cast the unspecified "financial discrepancies" in an even more negative and serious light.

However, based on the evidence presented, the truth was more complicated than the email implied. Corazza testified that before she was fired, she had decided to leave the clinic due to disagreements that she had with Shohamy regarding business decisions that he had made. On the same day that she gave the clinic her two weeks' notice, she was told that she was fired effective immediately, purportedly because of a "dollar raise" that Zilkha-Shohamy claimed was not authorized but that Corazza claimed they had "talked about" earlier. The email did not include any of these details, which would have provided important context to the unspecified "financial discrepancies" that appellants had accused Corazza of committing. Based on the limited evidence before us, we cannot conclude that the email is as or less damaging to Corazza's reputation than a truthful publication would have been. Accordingly, appellants failed to prove by a preponderance of the evidence that the email was "substantially true" so as to entitle them to dismissal under the TCPA.

We overrule appellants' second issue.

## CONCLUSION

We affirm the district court's order denying appellants' motion to dismiss.

_____

Gisela D. Triana, Justice

Before Justices Goodwin, Triana, and Smith

Affirmed

Filed:  July 16, 2021

14